# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KRISTIE HARTMAN,          )
                                              )
               Plaintiff,          )      Civil Action No. 11-162 Erie
                                              )
     v.                                      )
                                              )
MICHAEL J. ASTRUE,         )
Commissioner of Social Security,    )
                                              )
               Defendant.         )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., District Judge.

### I.      INTRODUCTION

Kristie Hartman ("Plaintiff"), commenced the instant action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* and § 1381 *et seq*. Plaintiff filed her applications on May 13, 2008 alleging disability since May 1, 2007 due to "[d]egenerative deteriorating back disease" (AR 116-125; 135 ).[1] Her applications were denied (AR 58-66), and following a hearing held on October 9, 2009 (AR 34-54), the administrative law judge ("ALJ") issued his decision denying benefits to Plaintiff on December 8, 2009 (AR 21-29). Plaintiff's request for review by the Appeals Council was subsequently denied (AR 1-4), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, the Plaintiff's motion will be denied and the Commissioner's motion will be granted.

---

[1] References to the administrative record [ECF No. 6], will be designated by the citation "(AR ___)".

## II. BACKGROUND

Plaintiff was 36 years old on the date of the ALJ's decision (AR 27). She has a high school education and past work experience as a school bus driver and cook (AR 136; 140).

On May 21, 2007, Plaintiff was seen by Laura McIntosh, M.D. and complained of bilateral hand pain, intermittent left foot numbness, and back pain (AR 247). On physical examination, her neck range of motion was within normal limits (AR 248). She had 4/5 strength in her upper extremities and her deep tendon reflexes were normal (AR 248). Dr. McIntosh reported Plaintiff had decreased sensation to light touch on the whole aspect of her hand, and the medial aspect of her forearm to the elbow bilaterally (AR 248). No tenderness was found along her lumbar spinous processes, but some tenderness was found over her sacrum (AR 248). She exhibited a limited lumbar range of motion with forward flexion and extension due to pain, but was able to sit and stand without using her arms (AR 248). Dr. McIntosh reported that her sensory examination was within normal limits (AR 248). Cervical spine x-rays revealed some narrowing of the C4-5 disc space with some foraminal narrowing (AR 249). Dr. McIntosh ordered additional testing (AR 249).

A cervical MRI dated June 2, 2007 revealed a mild disc bulge at the C3-4 and C5-6 levels with no evidence of spinal cord or nerve root impingement (AR 346). An EMG revealed median nerve impingement indicative of carpal tunnel syndrome (AR 243). An MRI of Plaintiff's lumbar spine dated June 22, 2007 revealed mild degeneration and bulge of the L3-4 disc with no disc herniation or canal stenosis (AR 243; 345).

Plaintiff returned to Dr. McIntosh on July 16, 2007 and continued to complain of bilateral hand numbness and left leg numbness and pain (AR 241). Plaintiff further complained of left foot pain (AR 241). Plaintiff reported difficulty with daily activities, walking, and climbing stairs (AR 241). On physical examination, Plaintiff's wrist range of motion was limited bilaterally in all directions, she had normal grip strength, and her sensation testing was "abnormal" (AR 242). Her lumber range of motion on flexion, extension, side bending and twisting was within normal limits, although some pain was noted on forward flexion (AR 242). Dr. McIntosh diagnosed Plaintiff with bilateral hand tingling, cervical and lumbar disc

degeneration, and carpal tunnel syndrome (AR 242). She was referred to a hand surgeon and physical therapy was prescribed for her back pain (AR 243).

Plaintiff underwent a course of physical therapy between July 2007 and September 2007 (AR 181-200). At her initial evaluation, Plaintiff reported limitations in walking, bending, lifting, standing, sitting, driving, and grasping (AR 199-200). Treatment notes revealed that Plaintiff exhibited good lumbar and cervical alignment, her spine mobility improved, and she reported that her pain decreased (AR 181-200).

Plaintiff returned to Dr. McIntosh on August 11, 2007 and reported an improvement in her pain following physical therapy, but claimed it returned with activity (AR 236). She also reported mild improvement in her neck range of motion (AR 236). On physical examination, Dr. McIntosh found that her neck and back range of motion were normal, and her upper and lower extremity strength was within normal limits (AR 237-238). Dr. McIntosh further found that her sensation and reflexes were intact in her lower extremities (AR 238). Plaintiff's diagnosis remained the same, and Dr. McIntosh reported that she had modest improvement in her neck and back pain with physical therapy (AR 238). Home exercises were added to her treatment regimen, and she was scheduled to see an orthopedic surgeon for her carpal tunnel syndrome (AR 238).

On September 17, 2007, Plaintiff complained of lumbar pain, bilateral hand numbness and left foot/calf pain (AR 233). She reported minimal benefit from physical therapy and claimed she continued to have numbness and weakness in her lower extremities (AR 233). Physical examination revealed limited lumbar range of motion due to pain, and limited ankle range of motion, with some tenderness noted in her foot on palpation (AR 234). X-rays of her foot and ankle showed no bony abnormality, fracture or dislocation (AR 235; 343). Plaintiff reported that she preferred to continue with conservative treatment for her back instead of physical therapy (AR 235). She was instructed on range of motion exercises for her foot and ankle pain (AR 235).

On October 1, 2007, Plaintiff was seen by Patrick Williams, D.O. for evaluation of her bilateral carpal tunnel syndrome (AR 225-226). Dr. Williams recommended she undergo carpal tunnel release surgery (AR 226).

Plaintiff returned to Dr. McIntosh on October 22, 2007 and complained of back pain and bilateral knee pain (AR 221). It was noted that she was seeing Paul Carnes, M.D., for epidural injections for her back pain (AR 224). She was instructed on knee range of motion and strengthening exercises for her knee pain (AR 224).

On December 19, 2007, Dr. Carnes administered a lumbar epidural injection and when seen by Dr. McIntosh on December 22, 2007, Plaintiff had no back pain complaints (AR 202; 218). Dr. McIntosh reported that Plaintiff had excellent results from the epidural injection; her pain was almost gone and she had no numbness or tingling in her legs (AR 218). It was noted that Plaintiff had undergone carpal tunnel release surgery on her right hand which had improved her symptoms (AR 218).

An MRI of Plaintiff's lumbar spine dated January 12, 2008 was unremarkable (AR 342). Compared to her previous MRI performed in June 2007, the mild bulge at L3-4 was stable, no new disc pathology was seen, and there was no nerve root impingement (AR 342).

Plaintiff underwent a consultative examination performed by Daniel Muccio, a neurosurgeon, on January 29, 2008 (AR 205-207). Plaintiff complained of low back pain that occasionally radiated into her left leg, but denied any lower extremity weakness (AR 205). She reported undergoing physical therapy, injection therapy and chiropractic therapy, and at the time of the evaluation took Ibuprofen as needed for pain (AR 205). Dr. Muccio reported that her neurological examination was normal, her motor strength was 5/5 in her lower extremities, there was no foot drop, her deep tendon reflexes were 2+ and symmetrical, and her gait was steady (AR 206). Conservative treatment was discussed, including physical therapy, anti-inflammatory medication, core strengthening and weight loss (AR 206).

Plaintiff returned to Dr. McIntosh on February 25, 2008 and complained of back pain (AR 213). Plaintiff reported that she had undergone epidural injection therapy without significant improvement (AR 213). She claimed she experienced pain with daily activities and

4

extended sitting, but was comfortable sitting in a hard chair or rocker (AR 213). She took Advil at night to help her sleep (AR 213). Dr. McIntosh noted that her repeat MRI revealed no significant change and that Dr. Muccio felt she was not a surgical candidate (AR 213). Plaintiff reported that her right hand was doing well but she complained of right elbow pain (AR 213). On physical examination, Dr. McIntosh reported that her lumbar range of motion, sensation, reflexes and strength were all within normal limits (AR 215). She exhibited mild tenderness at the L5, S1 levels (AR 215). Her upper extremity examination was also reported as normal, and no effusion, redness or warmth of joint was observed in her right elbow (AR 215). She was diagnosed with lumbago, lumbar disc degeneration, and lateral epicondylitis (AR 216). Dr. McIntosh recommended a pain management consult for her back pain (AR 216). She further prescribed wrist splints, and instructed Plaintiff on wrist strengthening and range of motion exercises for her carpal tunnel symptoms (AR 216).

Plaintiff completed a "Function Report" on a form supplied by the Commissioner on June 18, 2008 (AR 145-152; 160-161). She reported that she took care of her children, which included getting them ready for school and helping them with their homework (AR 146). She further reported that she took care of her pets, cooked, did the laundry, cleaned the house, grocery shopped, watched television, read, and played games with her children (AR 145-148). Plaintiff reported she could lift ten pounds, and walk 100 feet before needing to stop and rest (AR 150). She further reported that her ability to engage in postural activities was dependent upon her pain level (AR 150). She indicated that she wore a back brace but did not need an assistive device to walk (AR 151; 161).

On July 21, 2008, Juan Mari-Mayans, M.D., a state agency reviewing physician, reviewed the medical evidence of record and opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for three hours in an 8-hour workday; and sit for six hours in an 8-hour workday (AR 336). He further opined that Plaintiff could only occasionally climb, balance, stoop, kneel, crouch, and crawl (AR 337). Dr. Mari-Mayans concluded that Plaintiff's claimed restrictions were only partially credible in light of the medical evidence of record (AR 340).

5

On August 5, 2008, Plaintiff was evaluated by Jonathan Costa, M.D., a physiatrist, at Dr. McIntosh's request (AR 406-408). Plaintiff reported low back pain radiating to her lower extremities (AR 406). She claimed that her pain was alleviated by lying down and was aggravated by sitting or standing (AR 406). On physical examination, Dr. Costa reported that Plaintiff was able to sit and move "well" and her gait was within functional limits (AR 407). There was some decrease in sensation in her lower extremities, but her strength was intact with minimal pain on hip flexion (AR 407). Dr. Costa diagnosed Plaintiff with, *inter alia*, a strain/sprain of the thoracic and lumbar spines and sacral regions (AR 407). He prescribed methadone, Darvocet, Valium, Zanaflex, and Voltaren gel (AR 408).

Plaintiff returned to Dr. McIntosh on August 20, 2008 and complained of back discomfort and numbness radiating into her feet bilaterally (AR 377). On physical examination, Dr. McIntosh reported that her sensation, reflexes and strength were normal, and her previously reported ankle pain had resolved (AR 378-379).

On September 2, 2008, Plaintiff was seen by Dr. Costa and reported that the methadone gave her a "weird feeling" (AR 404). She complained that her pelvic and sacroiliac joint areas were painful, but that Voltaren helped alleviate the pain (AR 404). Dr. Costa formed an impression of "[r]ecurrent sacroiliac joint derangement" and adjusted her medications (AR 404-405).

Plaintiff returned to Dr. Costa on October 2, 2008, who reported that Plaintiff had provided an inconsistent history since her last office visit, which he found "very bothersome" (AR 403). He ordered a urine drug screen due concerns about Plaintiff's Vicodin and Methadone use (AR 403). He recommended she see John Cassara, D.C., for treatment (AR 403).

On October 6, 2008, Plaintiff was seen by Dr. Cassara and reported moderate to severe pain in her lower back and moderate right hip pain (AR 413). On physical examination, Plaintiff had moderate loss of joint function at the L1-sacrum level and moderate pain on palpation at the L1-sacrum level bilaterally (AR 413). She also had marked spasticity of the lumbar paraspinal muscles and gluteal muscles bilaterally on palpation (AR 413). Dr. Cassara reported that her straight leg raise testing was positive, but her heel to toe walk was "okay" (AR 413). Dr.

Cassara determined that Plaintiff was in an acute phase with respect to her back pain and performed chiropractic therapy (AR 413-414). Plaintiff continued to complain of pain on October 10, 2008, and Dr. Cassara performed chiropractic adjustment therapy (AR 415).

On December 1, 2008, Plaintiff was seen by Dr. McIntosh and reported that she had stopped seeing Dr. Costa (AR 380). She took Aleve on a regular basis for pain and noted that Zanaflex, Gabapentin and Voltaren cream were also helpful (AR 380). Plaintiff complained of a "great deal of pain" in the lateral aspect of her right foot and with weight-bearing activity (AR 380). Plaintiff's foot was tender on palpation but her ankle range of motion was within normal limits (AR 382). Dr. McIntosh found her examination consistent with plantar faciitis, and foot films revealed no bony abnormalities (AR 383). She was placed in a post-op shoe to mobilize her midfoot and instructed on range of motion and strengthening exercises (AR 383). Dr. McIntosh reported that her lumbar pain had improved with medication, and she prescribed Vicodin and advised her to continue her home exercise program (AR 383).

On December 19, 2008, Plaintiff reported increased foot pain with occasional numbness (AR 384). On physical examination, some small effusion was noted on her right foot and she complained of pain on weight bearing (AR 385-386). Dr. McIntosh noted that her gait was antalgic (AR 386). Her neurologic testing was unremarkable (AR 387). X-rays of Plaintiff's right foot revealed no acute fracture or dislocation, and no significant arthritic change was seen (AR 386). There was some marginal spurring at the first metatarsal head and moderate spurring at the volar calcaneal surface (AR 386). Plaintiff was diagnosed with metatarsalgia and fitted for a low-tide walker for her right foot (AR 386-387). An MRI was ordered (AR 387).

An MRI of Plaintiff's right foot dated January 3, 2009 revealed no evidence of a metatarsal fracture or abnormal marrow edema about the metatarsals (AR 361). When seen by Dr. McIntosh on January 5, 2009, Plaintiff reported that she still had pain when walking but had stopped wearing the low-tide shoe because it caused back pain (AR 388). Plaintiff further reported that she felt "jittery" and dizzy (AR 388). Dr. McIntosh ordered blood work and recommended she use a decongestant for her dizziness (AR 391-393). She observed that

Plaintiff's foot MRI revealed no evidence of any bony injury, and recommended that she begin physical therapy (AR 392).

On January 26, 2009, Plaintiff returned to Dr. McIntosh and continued to complain of jitteriness, but reported that her dizziness had resolved (AR 393). She also complained of chest tightness, shortness of breath with activity, and headaches (AR 393). Her pulmonary and cardiovascular examinations were normal (AR 395). Her EKG revealed some persistent sinus arrhythmia with frequent premature atrial contractions (AR 396). Dr. McIntosh adjusted her medications and referred her for a cardiac workup (AR 396). An echocardiogram dated February 10, 2009 revealed a borderline enlarged left atrium, and an isotope adenosine stress test revealed no obvious ischemia or infarction (AR 362-363; 366-367).

On March 11, 2009, Plaintiff was evaluated by Thomas Wittmann, M.D. and complained of intermittent shortness of breath, cough and wheezing (AR 369). She weighed 312 pounds, and reported that she had always weighed more than 300 pounds as an adult (AR 369). On physical examination, Plaintiff was alert, pleasant and in no acute distress (AR 370). Dr. Wittmann reported that her breathing was unlabored, there was 98% saturation of the room air with ambulation, and she had no clubbing, cyanosis, ankle edema, or peripheral adenopathy (AR 370). Her breath sounds were symmetric, clear, and of normal intensity, she had no crackles or wheezes, and her diaphragmatic excursion was normal (AR 370). She had no bone tenderness on musculoskeletal examination, and no focal weakness on neurological examination (AR 371). Dr. Wittmann reported that her chest x-ray was normal, but her spirometry showed moderate obstruction without bronchodilator response (AR 371). Plaintiff was diagnosed with asthma, probable sleep apnea and obesity (AR 371). She was prescribed inhalers and scheduled for a sleep study (AR 371).

When seen by Dr. McIntosh on July 13, 2009, Plaintiff reported that she had fallen eleven times in the past two to three weeks due to leg weakness (AR 350). She denied any significant increase in her lumbar back pain (AR 350). Plaintiff further reported heaviness in both legs and claimed she shuffled when walking (AR 350). On physical examination, Dr. McIntosh found Plaintiff had a normal range of motion of the lumbar spine, no muscle

tenderness, and normal strength (AR 351-352). She had some decreased sensation in her feet to light touch and pinprick, but normal sensation to cold and vibration (AR 352). She had no effusion, redness or warmth in her feet, and her ankle range of motion was within normal limits (AR 352). Plaintiff had pain on weight-bearing in her plantar heels bilaterally, but her gait was normal (AR 352). Dr. McIntosh diagnosed Plaintiff with plantar fasciitis and recommended physical therapy (AR 353). Dr. McIntosh reported that Plaintiff's musculoskeletal examination was "fairly unremarkable" (AR 353). Dr. McIntosh further reported that Plaintiff's symptoms and examination were not suggestive of lumbar disc disease, and she considered a neurology referral (AR 353).

Plaintiff was evaluated by a physical therapist on August 4, 2009 for her complaints of bilateral foot numbness (AR 373). No physical therapy was recommended and Plaintiff was educated in a home exercise program (AR 374).

On August 19, 2009, Plaintiff was evaluated by John Flamini, M.D., a neurologist (AR 409-411). Plaintiff reported episodes of falling unaccompanied by pain or spasm (AR 409). Plaintiff's general physical examination, cranial nerve examination, and motor system examination were normal, and Dr. Flamini reported that he could "find nothing wrong" (AR 410). He found no evidence of hyperreflexia, arreflexia, weakness, or spasticity (AR 410). There was no dermatomal sensory level, and no other significant abnormalities "whatsoever" (AR 410). He recommended Plaintiff undergo a brain MRI (AR 410). Plaintiff's brain MRI dated September 2, 2009 was normal (AR 412).

Plaintiff and Fred Monaco, a vocational expert, testified at the hearing held by the ALJ on October 9, 2009 (AR 34-54). Plaintiff testified that she was separated from her husband and lived with her three children, ages eighteen, twelve and eight (AR 38-39). She indicated that she had recently been prescribed a cane, but no longer needed a wrist brace for her carpal tunnel syndrome (AR 40). Plaintiff testified that surgery had resolved her carpal tunnel syndrome in her right hand, but she had postponed surgery on her left hand (AR 41). Plaintiff indicated that she suffered from constant back pain that radiated down her legs and into her feet that was aggravated by activities (AR 42; 47). Plaintiff testified that she performed home exercises, used

9

ice packs "once in a while" and took hydrocodone and gabapentin in order to alleviate her pain (AR 42). Plaintiff claimed that her medications were somewhat helpful, but caused drowsiness (AR 49). Plaintiff further testified that she had fallen on more than one occasion during the previous six months (AR 46). She indicated that she suffered from asthma but it was controlled with medications (AR 48).

Plaintiff testified that she could walk 120 feet, stand for ten to fifteen minutes, and sit for forty-five minutes before needing to move around (AR 43). She was unable to bend at the waist and pick up items from the floor, but was able to manipulate buttons and zippers (AR 44). Plaintiff claimed that she needed help getting dressed due to an inability to bend over and tie her shoes (AR 45). Plaintiff testified she was able to cook and grocery shop, but that her children helped with the laundry (AR 45). Plaintiff indicated that she no longer engaged in outside activities or daily activities (AR 49-50).

The ALJ asked the vocational expert to assume an individual of the same age, education and work experience as the Plaintiff, who was capable of light work with the following limitations: no climbing, crawling, kneeling, balancing or heights; no operation of foot controls; no repeated bending at the waist to 90 degrees; no squatting; no constant gripping or manipulating with the hands; and no exposure to pulmonary irritants (AR 51). The vocational expert testified that such an individual could perform the light and/or sedentary jobs of a security guard, document preparer; production checker, and surveillance system monitor (AR 52).

Following the hearing, the ALJ issued a written decision finding that Plaintiff was not disabled within the meaning of the Act (AR 21-29). Her request for an appeal with the Appeals Council was denied, rendering the ALJ's decision the final decision of the Commissioner (AR 1-4). She subsequently filed this action.

### III. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988)

(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 1097, 229 (1938)); *see also Richardson v. Parales*, 402 U.S. 389, 401 (1971); *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson*, 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh evidence of record. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D.Pa. 1998); *see also Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3d Cir. 1986) ("even where this court acting *de novo* might have reached a different conclusion … so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings."). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

### IV. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). Title XVI of the Act establishes that SSI benefits are payable to those individuals who are similarly disabled and whose income and resources fall below designated levels. 42 U.S.C. § 1382(a). A person who does not have insured status under Title II may nevertheless receive benefits under Title XVI. *Compare* 42 U.S.C. § 423(a)(1) with 42 U.S.C. § 1382(a). In order to be entitled to DIB under Title II, a claimant must additionally establish that his disability existed before the expiration of his insured status. 42 U.S.C. § 423(a), (c). The ALJ found that the Plaintiff met the disability insured status requirements of the Act through December 31, 2010 (AR 21). SSI does not have an insured status requirement.

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition. *See* 20 C.F.R. §§ 404.1520; 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, Appx. 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

Here, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease in the lower back; cervical disc disease; asthma; bilateral carpal tunnel syndrome; and obesity; but determined at step three that she did not meet a listing (AR 23-24). The ALJ described the Plaintiff's residual functional capacity as follows:

> …[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant has the residual functional capacity for a range of light work with the additional limitations: no crawling, kneeling, balancing, or work at heights; no repeated bending at the waist to 90°; no squatting; no constant gripping or manipulating with the hands; no exposure to environmental irritants such as dust, fumes, and smoke; and the claimant cannot operate foot controls.

(AR 24). At the final step, the ALJ concluded that Plaintiff could perform the jobs cited by the vocational expert at the administrative hearing (AR 28). Again, we must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Plaintiff's first challenge relates to the ALJ's residual functional capacity ("RFC") assessment. *See* [ECF No. 10] pp. 11-12. "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft*, 181 F.3d at 359 n.1); *see also* 20 C.F.R. §§ 404.1545(a); 416.945(a). An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2). In making this determination, the ALJ must consider all the evidence before him. *Burnett*, 220 F.3d at 121. Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence due to the fact that the "record [was] incomplete" because it did not contain an examining physician's opinion regarding her physical abilities. *See* [ECF No. 10] p. 11. We disagree.

We begin by observing that it was Plaintiff's obligation to provide medical and other evidence supporting her claim. *See* 42 U.S.C. § 423(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require"); 20 C.F.R. §§ 404. 1512(a), 416.912(a) ("you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)"); 20 C.F.R. §§ 404.1512(c), 416.912(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled"); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."); *Money v. Barnhart*, 91 Fed. Appx. 210, 215 (3d Cir. 2004) ("The burden lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition."); *Motz v. Astrue*, 2012 WL 851041 at *4 (W.D.Pa. 2012) ("It was incumbent upon Motz to submit evidence of disabling functional limitations."); *Clark v. Astrue*, 2010 WL 1425326 at * 14 (W.D.Pa. 2010) ("If Clark believed herself to have limitations in excess of those identified by [the nonexamining medical consultant], the onus was on her to present evidence from her treating physicians establishing the

existence of those limitations."); *Dodson v. Astrue*, 2010 WL 1292167 at *8 (W.D.Pa. 2010) ("[T]the burden was on Plaintiff to submit evidence from treating and examining sources detailing her work related limitations.").

The ALJ has the duty to obtain additional evidence only if the evidence before the Commissioner is insufficient to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("[I]f … we do not have sufficient evidence to decide whether you are disabled, … we will try to obtain additional information … ."); *see also Money*, 91 Fed. Appx. at 216 (3d Cir. 2004). Here, as set forth more fully above, the record contained medical records from multiple treating sources, including Dr. McIntosh, Plaintiff's primary care physician (AR 211-317; 376-400), Dr. Carnes, a surgeon (AR 201-202), Dr. Costa, a pain management specialist (AR 401-408), Dr. Flamini, a neurologist (409-412), Dr. Muccio, a neurosurgeon (AR 230-210), and Dr. Cassera, a chiropractor (AR 413-418). The record also contained physical therapy records (AR 181-200) and diagnostic testing results (AR 243; 249; 342; 345-346; 361; 386). These records provided a sufficient basis for the ALJ's determination relative to disability. We find no error in the ALJ's failure to have obtained additional evidence.

Plaintiff also argues that the ALJ erred in relying on Dr. Mari-Mayans opinion because Dr. Mari-Mayans did not review "the objective medical testing of the Plaintiff's spine" and he did "not have a treating source statement in the record." [ECF No. 10] p. 11. Neither of these contentions is supported by the record. Dr. Mari-Mayans' report reflects that he reviewed the Plaintiff's lumbar MRI studies dated May 22, 2007, which showed mild L3-4 disc bulge (AR 340). Dr. Mari-Mayans reviewed the consultative examination notes from Dr. Muccio, who found no evidence of weakness or inadequate motor strength (AR 340). Finally, Dr. Mari-Mayans had the benefit of Dr. McIntosh's treatment records, who found Plaintiff's muscle strength to be "good" (AR 340).

Plaintiff also appears to contend that evidence which post-dated Dr. Mari-Mayans review undermines the validity of his assessment. Plaintiff's MRI conducted on January 12, 2008 was essentially unremarkable (AR 342). In addition, after examining Plaintiff with respect to her complaints of frequent falling, Dr. McIntosh reported that her physical examination was

14

unremarkable and that her symptoms were not suggestive of lumbar disc disease (AR 353). Dr. Flamini, the neurologist who evaluated Plaintiff for her complaints of falling, found nothing wrong with Plaintiff, reporting that he could find no evidence of hyperreflexia, arreflexia, weakness, spasticity, dermatomal sensory level, or any other significant abnormalities "whatsoever" (AR 410). These records do not lend support to Plaintiff's contention that she was incapable of working.

We also note that in rendering his RFC assessment, the ALJ relied on other medical evidence. The ALJ observed that Plaintiff's MRI tests in 2007 and 2008 revealed only mild to moderate degenerative disc disease in the lumbar and cervical spines (AR 25-26). The ALJ noted that Plaintiff had undergone carpel tunnel release surgery in November 2008, and there was no indication that it had not been successful (AR 25). The ALJ found that Plaintiff had undergone physical therapy for problems with her wrists, lower back and neck, but treatment notes did not reveal any functional limitations (AR 25). The ALJ also reviewed Dr. Muccio's consultative examination results (AR 25-26). The ALJ found it "significant" that Dr. Muccio's physical examination of the Plaintiff yielded normal findings consisting of 5/5 strength, intact sensation and normal gait (AR 26). The ALJ also observed that Dr. Muccio imposed no functional limitations on the Plaintiff (AR 26). The ALJ considered the findings of Dr. Flamini, who noted that an MRI of Plaintiff's brain, which had been ordered by Dr. Flamini, was normal, and that his examination revealed no significant findings (AR 26-27). All of the ALJ's conclusions with respect to the previously described medical evidence are supported by substantial evidence.

Plaintiff further argues that "medical evidence from her treating doctors support her claims for disability." [ECF No. 10] p. 11. Plaintiff points to the findings of Dr. Cassara, her chiropractor, in October 2008 that she exhibited moderate pain on palpation and that her straight leg raise testing was positive. [ECF No. 10] p. 11-12. However, Plaintiff was treated by Dr. Cassara on only two occasions, and his findings were inconsistent with the repeated benign physical examinations, as set forth in detail above, reported by Plaintiff's treating and examining physicians. Plaintiff further points to Dr. McIntosh's finding in July 2009 that she had some

decreased sensation to light touch in both feet. [ECF. No. 10] p. 12. The remainder of the findings on physical examination revealed that overall, Dr. McIntosh concluded that her musculoskeletal examination was "fairly unremarkable" (AR 353). Accordingly, these selective findings do not support Plaintiff's claimed inability to work in light of the remaining substantial evidence supporting a contrary conclusion.

Plaintiff's final argument is that the ALJ erred in assessing her credibility. An ALJ must consider subjective complaints by a claimant and evaluate the extent to which those complaints are supported or contradicted by the objective medical evidence and other evidence in the record. 20 C.F.R. §§ 404.1529(a), 416.929(a). Such other evidence includes the claimant's own statements, the claimant's daily activities, the treatment and medication the claimant has received, any statements by treating and examining physicians or psychologists, and any other relevant evidence in the case record. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *SSR* 96-7p, 1996 WL 374186 at *2. The ALJ as the finder of fact can reject, partially or fully, subjective complaints if he finds them not credible based on other evidence in the record. *See Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). The ALJ is empowered to evaluate the credibility of witnesses and his determination is entitled to deference by this Court. *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983).

Plaintiff argues that the ALJ relied on her daily activities in concluding that she was not disabled. [ECF No. 10] p. 12. However, the ALJ did not conclude that Plaintiff's ability to engage in activities of daily living was dispositive of disability, nor do we find that the ALJ improperly considered them in assessing her credibility. Rather, in addition to her daily activities, the ALJ also considered the medical evidence from her treating and examining physicians, and the nature of the medical treatment sought and received (AR 27). For example, the ALJ reasoned:

> Any testimony of the claimant not consistent with her residual functional capacity as found herein is not credible. For example, the claimant testified that she can walk only 120 feet; stand for only 10 to 15 minutes; sit for only 45 minutes; lift only 10 pounds; that she needs help with her personal needs; and that she underwent a right carpal tunnel release in November 2008. As noted above, there is nothing in the record, including the progress notes of both the claimant's

16

> treating physicians or any consultative examining physicians, which indicates that she has the type of limitations in standing, sitting, walking, and lifting as she reported [at] the hearing.

(AR 27). The ALJ further considered Plaintiff's treatment history, and observed that she had not taken any type of pain or anti-inflammatory non-steroidal medication on any type of sustained basis, and even if she had, she had not expressed any adverse side effects that would interfere with her ability to work (AR 27). An individual's statements may be deemed less credible if the level and frequency of treatment is inconsistent with the level of complaints. *SSR* 96-7p, 1996 WL 374186 at *7.

In sum, all of the above findings are supported by substantial evidence and we find no error in the ALJ's credibility determination.

## V. CONCLUSION

An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KRISTIE HARTMAN,                )
                                )
    Plaintiff,              )    Civil Action No. 11-162 Erie
                                )
  v.                            )
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social Security,)
                                )
    Defendant.              )

## **ORDER**

AND NOW, this 25th day of October, 2012, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [ECF. No. 9] is DENIED, and the Defendant's Motion for Summary Judgment [ECF No. 11] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Kristie Hartman.

The clerk is directed to mark the case closed.

                                                         s/ Sean J. McLaughlin
                                                         United States District Judge

cm:    All parties of record